**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**

MATTHEW DEHART,

                Petitioner,

      v.

J.C. STREEVAL, Warden, FCI Ashland;
ANGELA P. DUNBAR, Bureau of Prisons
Regional Director Mid-Atlantic Region; HUGH
J. HURWITZ, Bureau of Prisons Acting
Director; IAN CONNORS, National Inmate
Appeals Administrator; THOMAS R. KANE,
Secretary of the Department of Homeland
Security; JEFFERSON SESSIONS, Attorney
General of the United States.

                Respondents.

Civil File No. _____

**PETITION FOR WRIT OF**
**HABEAS CORPUS UNDER**
**28 U.S.C. § 2241**

**INTRODUCTION**

Petitioner Matthew DeHart's pretrial custody credit was taken away by the Bureau of

Prisons without justification, through punitive misapplication of the rules for calculating credit

from foreign pretrial custody. He has now exhausted his administrative remedies, and petitions

this Court for a writ of habeas corpus under 28 U.S.C. § 2241.

Mr. DeHart was detained in Canada for 439 days, in maximum security criminal facilities

run by Canada's equivalent to the Bureau of Prisons, because of criminal charges pending

against him in the Middle District of Tennessee.[1] In plea negotiations and at his sentencing

hearing, all parties in the Tennessee case presumed these days would be credited to Mr. Dehart

---

[1] *See United States v. Matthew DeHart*, 3:10-CR-00250 (M.D. Tenn. (Nashville Division)).

as pretrial custody. This time was credited in the Bureau of Prison's ("BoP") initial sentencing calculation, which scheduled Mr. DeHart's release on September 11, 2018. Mr. DeHart served over one and a half years in prison under that sentencing calculation.

In August 2017, Mr. DeHart was presented with a questionnaire about foreign custody by prison personnel at FCI Ashland. He requested to speak with counsel about the questionnaire. BoP did not permit him to speak with counsel. Instead, framing it as if Mr. DeHart had requested a sentence recalculation, the BoP unilaterally recalculated his sentence and removed the entire credited time spent in Canadian custody. Mr. DeHart is entitled to a hearing at which the government must show that this recalculation of pretrial custody is justified.

Mr. DeHart is a U.S. citizen, who is serving a 7.5 year sentence after pleading guilty to offenses under 18 U.S.C. § 2252A(a)(2)(A), and 18 U.S.C. 3146(a)(1), for failure to appear. The failure to appear charge resulted from Mr. DeHart and his family's flight to Canada, where they applied for but were ultimately denied political asylum. The application was based on torture Mr. DeHart experienced during his initial arrest in 2010.

Mr. DeHart and his family resided in Canada from April 3, 2013 until Mr. DeHart's return to the United States on March 1, 2015.[2] On April 4, 2013, the District Court for the Middle District of Tennessee issued a bench warrant based on Mr. DeHart's failure to appear at a scheduled pretrial conference. This bench warrant resulted in his arrest by Canadian authorities that same day. Mr. DeHart was detained from April 4, 2013, through September 6, 2013, based on the nature of the criminal charges against him in the United States, and concern that he would not appear for future hearings. He was not held in an immigration facility during this period of pretrial custody. On August 7, 2013, Mr. DeHart was ordered released on bond with certain

---

[2] Mr. DeHart's family returned separately, on April 1, 2015.

release conditions. The Toronto Minister's Counsel sought judicial review, and requested to stay the release order – this was ultimately dismissed by the Canadian Federal Court, and Mr. DeHart was released on September 6, 2013.

On April 23, 2014, a Canadian court determined Mr. DeHart violated the release conditions when his family moved to a different apartment unit in the building they lived in. Mr. DeHart was again held in pretrial detention in Canada from April 23, 2014 until February 28, 2015, in criminal non-immigration facilities. On March 1, 2015, Mr. DeHart returned, still in custody, to the United States. During their entire time in Canada, neither of his family members were subject to any release conditions or any period of detention.

After pretrial motions and prolonged plea negotiations, the parties reached a plea agreement. It provided for a total seven-year sentence, based on the understanding that roughly 4 years of that time would be credited from Mr. DeHart's pretrial detention in the United States and in Canada. At his sentencing hearing, Judge Trauger presumed that Mr. DeHart would receive credit for his pretrial custody, including the 439 days of pretrial custody in Canada. Neither party opposed or differed on the Court's statement about pretrial custody credit. (*See* Sentencing Transcript, Ex. A, at p. 16:12-15.) The BoP's initial sentencing calculation reflected this credit. (*See* Ex. B, Sentencing Calculation.)

On August 21, 2017, after Mr. DeHart requested to speak with counsel about a questionnaire, BoP decided to recalculate Mr. DeHart's credit for custody in a foreign country. The memo provided to Mr. DeHart falsely states that he "requested" that calculation – in fact, he had been given that credit already, and never requested a recalculation. (*See* Ex. C, David Miranda Letter.) The recalculation struck all of Mr. Dehart's pretrial detention credit for his time detained in Canada. (*See* Ex. D, Sentencing Recalculation.)

3

18 U.S.C. § 3585(b) is clear as to when credit is given for prior custody: Mr. DeHart should receive credit for "any time he has spent in official detention prior to the date the sentence commences … as a result of the offense for which the sentence was imposed; or … as a result of any other charge for with [Mr. DeHart] was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence." The BoP Sentence Computation Manual creates an exception for time spent in civil Immigration and Naturalization Services ("INS") custody under 8 U.S.C. § 1252. *See* Federal Prison System Program Statement No. 5880.28 ("Manual"), p. 1-15A. Mr. DeHart was a) held in criminal, not civil, detention facilities; b) not by INS, and c) not held under 8 U.S.C. § 1252.

Mr. DeHart was held in Canadian criminal facilities because of the charges pending against him in the United States. Moreover, his detention was initiated by the bench warrant issued for failure to appear by the United States District Court in the Middle District of Tennessee. He is entitled to the 439 days of pretrial custody for this time, as it was official detention in facilities akin to those controlled and operated by BoP. *See* Manual, p. 1-14E. In the alternative, two additional grounds entitle Mr. DeHart to this custody credit. First, he relied on it to his detriment in entering the binding plea agreement. Second, BoP's removal of this credit was vindictive retaliation in violation of Mr. DeHart's exercising his right to counsel, and an increase in his sentence which violates the Fifth Amendment's guarantee against multiple punishment.

**PARTIES**

### A.    Petitioner

Mr. DeHart is a U.S. citizen who previously served in the Air National Guard. He is presently detained at FCI Ashland. His family resides in New Hampshire.

**B.     Respondents**

Respondent J.C. Streeval is named in his official capacity as the Warden of FCI Ashland. In that capacity, Mr. Streeval is responsible for FCI Ashland, the physical location where Mr. DeHart has been in custody since on or about March 8, 2016. The address for FCI Ashland is State Route 716, Ashland, Kentucky 41105.

Respondent Angela Dunbar is named in her official capacity as the Regional Director for BoP's Mid-Atlantic Region. In that capacity, Ms. Dunbar has supervisory authority over the BoP facilities in that region, including FCI Ashland. The address for the BoP's Mid-Atlantic Regional Office is 302 Sentinel Drive, Annapolis Junction, Maryland, 20701.

Respondent Hugh Hurwitz is named in his official capacity as the current Acting Director of BoP, located in Washington, D.C. In that capacity, Mr. Hurwitz has supervisory capacity over BoP personnel, and he is the head of the bureau that retains legal custody of and initiated the sentencing time re-calculation of Mr. DeHart. The address for BoP Headquarters is 320 First Street NW, Washington, D.C. 20534.

Respondent Ian Connors is named in his official capacity as the National Inmate Appeals Administrator at BoP. In this capacity, Mr. Connors is responsible for the administration of the inmate appeals process for federal inmates, and is legally responsible for the determination of Mr. DeHart's appeal of the recalculation of his time in pretrial custody under 28 C.F.R. § 542.15 *et seq*. Mr. Connor's address is BoP, Office of General Counsel, 320 First Street NW, Washington, D.C. 20534.

Respondent Jefferson Sessions is named in his official capacity as the Attorney General of the United States. In this capacity, he is responsible for the administration of the laws as exercised by the Bureau of Prisons, under 18 U.S.C. § 4042. He routinely transacts business in the District of Kentucky, is legally responsible for the re-calculation of Mr. DeHart's time in

custody and the standards used in those proceedings, and as such is Mr. DeHart's legal custodian. Mr. Sessions' address is U.S. Department of Justice, 950 Pennsylvania Ave. NW, Washington, D.C. 20530.

## JURISDICTION

This Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. § 2241, as Mr. DeHart's term in federal custody is being determined in violation of the Constitution and laws of the United States. This Court has jurisdiction under 28 U.S.C. § 1331 in that it arises out of the laws and Constitution of the United States and seeks corrective action by the officers and employees of the United States in their official capacity, and under 28 U.S.C. § 1343(4) in that Mr. DeHart seeks redress for the deprivation of rights guaranteed by the Constitution and by federal statutes.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Mr. DeHart has exhausted his administrative remedies for these grievances. On August 17, 2017, Mr. DeHart received a questionnaire from his case manager at FCI Ashland, entitled "Foreign Jail Credit Questionnaire." That same day, Mr. DeHart requested that his counsel review the questionnaire before he filled it out, and promptly mailed a copy to this firm's office on August 18, 2017. On August 24, 2017, without responding to Mr. DeHart's request that counsel review the questionnaire, his case manager delivered a memo from Mr. David Miranda, which indicates BoP's intent to remove 439 days of credit for pretrial custody time, adding approximately 14.5 months to Mr. DeHart's time in custody. That same day, Mr. DeHart requested an administrative remedy from his case manager, who forwards the request to Mr. Boggs; Mr. Boggs threatens Mr. DeHart with retaliation for disputing the decision.

Between August 25 and 27, 2017, Mr. DeHart submitted three requests for an informal remedy via form ASH-1330.18A (BP-8). On August 29, 2017, a mailroom employee at FCI Ashland tells Mr. DeHart that the requests need to be submitted "to the DSCC," which Mr. DeHart is unable to do because of email restrictions. On September 12, 2017, Mr. DeHart finds a way to send the BP-8 form.

On September 14, 2017, Mr. Edwards denies the informal remedy request. That same day, Mr. DeHart requests a formal remedy form, BP-229, and submits it with attachments. On September 15, 2017, the formal remedy form is acknowledged received by FCI Ashland.

On September 26, 2017, Mr. DeHart receives a response from Thomas Smith, then the warden of FCI Ashland, denying his request for an administrative remedy. That same day, Mr. DeHart requested and received a BP-230 form for a regional administrative remedy appeal. On October 2, 2017, Mr. DeHart mailed the BP-230 form to the BoP's Mid-Atlantic Regional Director, Ms. Dunbar via certified mail. On October 7, 2017, it was confirmed delivered to the Mid-Atlantic Regional Director's office. A denial from the Mid-Atlantic Regional Director's office followed shortly after.

On November 15, 2017, Mr. DeHart prepared and sent his final appeal to BoP counsel in Washington, DC. It was confirmed delivered on November 21, 2017. (*See* Ex. E, Appeal to BoP National.) Citing a clerical issue ultimately determined to be BoP counsel's failure to notice several attached exhibit pages, BoP did not respond until March 1, 2018. Their response also denied Mr. DeHart's request for an administrative remedy. (*See* Ex. F, BoP National Response.)

This petition follows.

## VENUE

Mr. DeHart resided in Indiana prior to his detention, and has been held by Respondents for approximately 27 months at FCI Ashland. Therefore, the District of Kentucky is the proper venue to hear this Petition. Furthermore, this Petition was filed on June 24, 2018, when Mr. DeHart was physically located within the District of Kentucky, under the authority of Respondent Streeval, who is located within the authority of this Court.

## FACTUAL BACKGROUND

From 2005 until his 2010 arrest, Mr. DeHart was affiliated with the Internet activist group "Anonymous", and was a system administrator for a communal Tor[3] server used by members of that group.[4] During the period of 2008 through 2010 files appeared on this server that among other things, implicated a federal agency in criminal activity against United States citizens, as well as documented apparent malfeasance by American and multinational companies. During this period Mr. DeHart was also part of a drone team at one of the main U.S. Drone Operation Centers in Terre Haute, Indiana, where he had access to top secret information.[5] Mr. DeHart's involvement with Anonymous and the files that appeared on a Tor hidden server he was a system administrator on would later lead to his arrest and torture by the FBI related to an alleged, uncharged espionage accusation. Mr. DeHart was detained for days in inhumane conditions, without being permitted access to counsel despite repeated requests.

---

[3] Tor, short for "The Onion Router," is a deep web service which allows obfuscated access to websites and access to Tor sites ending in .onion. Tor is designed in a way that permits relatively anonymous browsing.

[4] *See United States v. Matthew DeHart*, Affidavit of Matthew P. DeHart at p. 1, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Nov. 6, 2012) (ECF #135-2)

[5] *United States v. Matthew DeHart*, October 26, 2011 letter from the U.S. Office of Personnel Management at p. 4, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Nov. 6, 2012) (ECF #135-12) (Showing Mr. DeHart's interim Secret clearance and his assignment to the 181st Operations Support Squadron.)

## I.      MR. DEHART IS ARRESTED AND TORTURED BY FEDERAL AGENTS

Around 8:00 a.m. on August 6th, 2010, at the international border crossing in Calais, Maine, Mr. DeHart crossed the border from Canada into the United States. According to an unclassified FBI report (the "FBI Report"), Mr. DeHart's border crossing set off an alert saying he "was wanted for questioning in an espionage matter." Immigration and Customs Enforcement ("ICE") agents detained Mr. DeHart.[6]

After the ICE agents searched and seized Mr. DeHart's person and belongings, they placed him in a detention cell. Around noon the ICE Agents handed over Mr. DeHart to FBI Agents from Bangor, Maine. The FBI Agents took him to the border crossing facilities at the International Avenue border crossing in Calais, Maine. The FBI Agents did not promptly take Mr. DeHart to a Federal Magistrate Judge for a detention hearing. Upon arrival at the International Avenue Border Crossing he was placed in another detention cell. The FBI Report states that the FBI began interrogating Mr. DeHart regarding national security matters at approximately 3:15 p.m.[7] That same afternoon the Complaint and Arrest Warrant were filed in the Middle District of Tennessee, Nashville Division, alleging a single violation of 18 U.S.C. 2251(a).[8]

According to the FBI Report, at approximately 6:00 p.m., two FBI Agents drove Mr. DeHart to the Penobscot County Jail, in Bangor, Maine where he was booked at approximately

---

[6] *United States v. Matthew DeHart*, Unclassified FBI 302 at p. 1, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Aug. 26, 2010) (ECF #123-2).

[7] *See id*.

[8] *United States v. Matthew DeHart*, Crim. Compl., No. 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Aug. 6, 2010) (ECF #1).

7:30 p.m.[9] At some point during his detention and interrogation on August 6, 2010 Mr. DeHart was administered an unknown drug intravenously against his will. From August 6 to 20, 2010, he was also variously subjected to sleep deprivation, deprivation of food and water, and naked solitary confinement.

At approximately 1:00 a.m. on August 7th, 2010, hospital records show Mr. DeHart was admitted to the emergency room of the Eastern Maine Medical Center in Bangor, Maine.[10] The ER physician's assessment was: 1) Acute Psychosis; 2) Tachycardia[11]; and 3) eye irritation (possibly from having his contact lenses in too long.)[12] Additionally, the ER Physician noted that Mr. DeHart "verbalize[d] the occasional auditory hallucinations with people calling his name ….."[13] The ER report stated that Mr. DeHart's symptoms were consistent with "possibl[y] drug-induced psychosis" and that the attending ER physician believed that Mr. DeHart may be experiencing "an acute psychotic break."[14] Urinalysis indicated the presence of amphetamines.[15]

---

[9] *Id.* at pp. 4-5.

[10] *United States v. Matthew DeHart, Mem. in Supp. of Mot. to Dismiss*, Exs. 1-2, No. 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Nov. 19, 2014) (ECF #123-1).

[11] Tachycardia "is a faster than normal hear rate at rest." Mayo Clinic, "Diseases and Conditions: Tachycardia", available at http://www.mayoclinic.org/diseases-conditions/tachycardia/basics/definition/con-20043012 (last accessed Aug. 10, 2015).

[12] *United States v. Matthew DeHart, Mem. in Supp. of Mot. to Dismiss*, Eastern Maine Medical Center, Emergency Department Record for Matthew DeHart, at 3, No. 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Nov. 19, 2014) (ECF #123-1).

[13] *Id.*

[14] *Id.*

[15] *Id.*

The ER report also stated Mr. DeHart appeared "paranoid and delusional" on the basis that he told the examining physician that FBI agents were accusing him of espionage.[16]

At around 4:30 p.m. on August 7th, 2010 the hospital discharged him into the custody of unknown federal agents who took him back to the Penobscot County Jail where, upon information and belief, he was interrogated by FBI agents over the weekend without counsel present.[17] Upon information and belief, Mr. DeHart repeatedly asked for access to legal counsel throughout the foregoing and was repeatedly denied.

On Monday, August 9, 2010 two agents arrived from the FBI Washington, D.C. Field Office's Counter-Intelligence Division. The FBI continued interrogating Mr. DeHart without his counsel present, despite repeated requests by him for his counsel, between at least August 9 through 11, 2010. The focus of the interrogation was national security matters, and few if any questions were asked about the Complaint. Upon information and belief, one of the FBI Agents told Mr. DeHart that he knew he was not guilty of the charge in the Complaint. Upon information and belief, the FBI Agents questioned Mr. DeHart about the contents of his Gateway Laptop that is central to this case, his association with Anonymous, and individuals he knew when he was associated with drone teams while in the Indiana Air National Guard.

Over the next nine days, from August 11th to the 20th, 2010, the FBI repeatedly interrogated Mr. DeHart without counsel present despite his repeated requests for counsel.

After August 20th, 2010, Mr. DeHart was transferred to a jail in Kentucky to await arraignment and trial on the charges against him in the Middle District of Tennessee, Nashville

---

[16]  *Id.*; it appears the examining physician was unaware that this was an accurate description of Mr. DeHart's situation at the time.

[17]  *Id.*

Division. He was released from pretrial detention on strict conditions, including ankle monitoring, on May 22, 2012.

## II.    MR. DEHART AND FAMILY SEEK ASYLUM IN CANADA

On April 3, 2013, Mr. DeHart and his family arrived at the border of Canada, where he and his family requested political asylum. He and his family surrendered to Canadian Authorities, where he was interviewed by members of Canadian Security Intelligence Service. Mr. Dehart's asylum application was the subject of immigration hearings which considered the pending charges in Tennessee. These were not deportation proceedings, but a determination of his admissibility on political asylum grounds.

## III.    BENCH WARRANT AND FIRST CUSTODY PERIOD

On April 4, 2013, a bench warrant issued in the Middle District of Tennessee, when Mr. DeHart failed to appear for a pretrial conference. This information was relayed to Canadian authorities, who detained and arrested Mr. DeHart on the basis of the pending criminal charges in the United States.[18] He was held by Canadian immigration authorities from April 4 until April 8, 2013. At that point, a Canadian federal court determined that the pending criminal charges justified holding Mr. DeHart in custody, finding him "a danger to the public due to the serious nature of the child pornography offences and the allegations of espionage, and his history of violating court orders."[19] He was sent to the Maplehurst Correctional Complex, then to Toronto West Jail, and finally to the Central East Correctional Centre, all maximum security criminal facilitoies run by Correctional Service Canada, an equivalent to the U.S. BoP.

---

[18] Specifically, he was detained until a hearing could be held to determine whether the Immigration and Refugee Protection Act ("IRPA") sections 34(1)(a), relating to acts of espionage, and 36(1)(c), relating to sex crime charges, rendered him inadmissible as a refugee. *See* Canadian Federal Court Reasons for Judgment, 2013 FC 936, Sep. 5, 2013. (ECF 196-1 in M.D. Tenn. matter), p. 4

[19] *Id.*

## IV.    MR. DEHART IS RELEASED ON CONDITIONS

After several detention review hearings between April 8 and early August 2013, Mr. Dehart was released subject to conditions.[20] These included restrictions on travel, house arrest, a prohibition on electronic device access, and GPS location monitoring.[21]

## V.    MR. DEHART IS DETAINED AGAIN IN CANADA

In late April, 2014, Mr. DeHart and his family moved to a different unit within their apartment building. This notified the GPS monitoring service by phone and email, who in turn notified the Canadian Border Services Agency ("CBSA"), to whom Mr. DeHart was required to report in-person within a specified time period after any address change. However, this address change took place over a holiday weekend, and the CBSA offices were closed through the expiration of that time period. Mr. Dehart was re-arrested because of this, and again held in a maximum security criminal facility after a Canadian court determined this violated his release conditions. He remained in custody there until his asylum claim was denied in late February, 2015.

## VI.    MR. DEHART AND HIS FAMILY RETURN TO THE UNITED STATES

In late February 2015, the Canadian authorities denied his and his family's asylum requests.  Mr. DeHart was turned over to FBI Agents near Buffalo, New York on March 1, 2015. Eventually he was transported to Bowling Green Prison in Kentucky, where he was detained pending trial.

---

[20] *Id*. at p. 6

[21] *Id*. at pp. 6-7

## VII.    SENTENCING CALCULATION

After pretrial motions and copious plea negotiations, Mr. DeHart entered into a plea agreement on the remaining charges in November 2015. These negotiations included several discussions between defense counsel and the prosecution which relied on the shared expectation that Mr. DeHart's two periods of pretrial detention in Canada would be fully credited towards his time in custody. At a sentencing hearing in February 2016, the sentencing judge echoed this expectation. *See* Ex. A, p. 16:12-15. While Judge Trauger stated "3 years" total time, the calculation was in fact closer to 4 years at that time, and 5 years total by the time of sentencing. *See* Ex. B.

## <u>LEGAL STANDARD</u>

## I.    STATUTORY FRAMEWORK

### A.    18 U.S.C. § 3585(b)

The text of 18 U.S.C. § 3585(b) mandates credit be awarded for "any time … spent in official detention prior to the date the sentence commences— (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed … that has not been credited against another sentence." 18 U.S.C. § 3585(b).

The BoP Manual excepts "time spent in the custody of the U.S. Immigration and Naturalization Services ["INS"] … pending a civil deportation determination" from the definition of "official detention." *See* Manual, p. 1-15A. It is silent on whether that exception includes time in non-INS facilities because of pending criminal charges.

**B.     The District Court May Grant Relief Under 28 U.S.C. § 2241.**

Although sentence calculation is determined by the Attorney General, a "district court may … grant petitioner relief under 28 U.S.C. § 2241." *McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993) (citing *Wright v. United States Bd. of Parole,* 557 F.2d 74, 77 (6th Cir.1977)).

## ARGUMENT

**I.     Mr. DeHart was Held in "Official Detention" as Defined by the Statute**

Mr. DeHart's pretrial custody in Canada was in criminal facilities, because of pending criminal charges in the United States. This is among the types of detention that 18 U.S.C. § 3585 contemplates in defining "official detention."

First, Canadian prison authorities administered these facilities, and retained discretion to transfer prisoners, among other discretionary powers. "The phrase 'official detention facility' in § 3585(a) therefore must refer to a correctional facility designated by the Bureau for the service of federal sentences, where the Bureau retains the discretion to 'direct the transfer of a prisoner from one penal or correctional facility to another.'" *Reno v. Koray*, 515 U.S. 50, 58, 115 S. Ct. 2021, 2026, 132 L. Ed. 2d 46 (1995). As Mr. DeHart was held in criminal facilities run by Canada's equivalent to the BoP, he should be credited this time.

Second, pretrial custody credit must be provided even if the detention is caused by immigration officials, or at a facility not controlled by BoP. Note that *Koray* "expressly declined to reach cases in which a defendant is held in detention in an official facility not operated or controlled by BOP." *Zavala v. Ives*, 785 F.3d 367, 373 (9th Cir. 2015). The *Zavala* court, in considering an individual held in U.S. ICE custody pending criminal charges, held that "when immigration officials detain an alien pending potential prosecution, the alien is entitled under §

3585(b) to credit toward his criminal sentence." *Zavala v. Ives*, 785 F.3d 367, 380 (9th Cir. 2015).[22]

As Mr. DeHart was detained after his failure to appear, he is entitled to this pretrial custody credit either on the sex offense charges or the failure to appear charge. They are treated separately in the Manual. *See* Manual, p. 1-14D. However, both sections turn on the above issue: whether the individual was in "official detention." As Mr. Dehart was in official detention, this time should be credited and may be applied to either sentence.

## II.    Mr. DeHart is Entitled to Credit as a Matter of Reliance on the Plea Agreement

Mr. DeHart accepted the plea agreement in this case because he was led to understand that the 439 days of foreign pretrial detention would apply as credit towards his time served. This understanding was shared by defense counsel, the U.S. attorneys, and the Middle District of Tennessee District Court judge. But for this understanding, Mr. DeHart would not have accepted the plea agreement offered by the prosecution. Moreover, the BoP's initial calculation included this time as well. One and a half years later, the BoP decided to rescind this credit because Mr. DeHart sought to speak to his attorneys.

Mr. DeHart relied on this binding plea agreement, and the prosecution's representations therein, to his detriment. Mr. DeHart similarly relied on the BoP's initial, correct calculation of his pretrial custody credit. He and his family have made post-release plans based on that calculation, including moving their residence to a new state, at considerable expense. "[a] defendant's detrimental reliance on a prosecutorial promise in plea bargaining could make a plea

---

[22] The only cases declining to follow *Zavala* arose from situations where the petitioner sought extension of its holding to situations where no criminal charges were pending, factually distinct from the situation faced by Mr. Dehart. *See, e.g., Aslanyan v. Johnson*, No. EDCV1502383GHKDFM, 2016 WL 6156078, at *3 (C.D. Cal. Sept. 9, 2016), *report and recommendation adopted,* No. EDCV1502383GHKDFM, 2016 WL 6156079 (C.D. Cal. Oct. 21, 2016); *Aguila v. Stone*, No. CV 317-008, 2017 WL 2197123, at *3 (S.D. Ga. May 18, 2017), *report and recommendation adopted,* No. CV 317-008, 2017 WL 2589968 (S.D. Ga. June 14, 2017).

agreement binding." *McKenzie v. Risley*, 801 F.2d 1519, 1527 (9th Cir.1986), vacated in part on

other grounds, 842 F.2d 1525 (9th Cir.), cert. denied, 488 U.S. 901 (1988); see also *Missouri v.*

*Frye*, 566 U.S. 134, 154 (2012); *Salyers v. Com.*, No. 2005-CA-002073-MR, 2007 WL 706866,

at *2 (Ky. Ct. App. Mar. 9, 2007). The promised pretrial credit should be equally binding, where

Mr. DeHart relied to his detriment on consistent promises by the prosecution, the sentencing

court, and BoP regarding his pretrial custody calculation, in a plea agreement containing a

binding sentence provision.

### III.   Removing this Custody Credit Violates Mr. DeHart's Fifth Amendment Due Process Rights

Additionally, Mr. Dehart neither appealed nor requested any recalculation of his

sentence. It was unilaterally imposed by BoP, after Mr. Dehart has served approximately one and

a half years of his sentence. Without any action which would disrupt Mr. Dehart's expectation of

finality, this increase is a multiple punishment, in violation of the Fifth Amendment's Double

Jeopardy clause and Mr. DeHart's constitutional guarantee against multiple punishment. *See U.S.*

*v. DiFrancesco*, 449 U.S. 117, 138-39 (1980); *U.S. v. Fogel*, 829 F.2d 77, 87 (D.C. Cir. 1987)

("a defendant has a legitimate expectation in the finality of a sentence unless he is or should be

aware at sentencing that the sentence may permissibly be increased."). Mr. DeHart had every

reason to believe BoP's initial sentence calculation was final, and never requested any change in

his sentence.

Moreover, this increase followed Mr. DeHart's request to discuss a legal form with his

attorneys, a request protected by the Sixth Amendment right to counsel. "[D]ue Process prohibits

an individual from being punished for exercising a protected statutory or constitutional right."

*U.S. v. Poole*, 407 F.3d 767, 774 (6th Cir. 2005) (*citing U.S. v. Goodwin*, 457 U.S. 368, 372

(1982)); *Parker v. Stewart*, No. 17-CV-11962, 2017 WL 3531390, at *6 (E.D. Mich. Aug. 17,

2017). This vindictive retaliation violated Mr. DeHart's due process rights and the guarantee against multiple punishment.

## CLAIMS FOR RELIEF

### FIRST CLAIM
### CUSTODY CREDIT FOR PRETRIAL DETENTION ON PENDING CRIMINAL CHARGES

1.  The preceding paragraphs are repeated and re-alleged as though fully set forth here.

2.  Mr. DeHart was not, as the BoP's responses to his administrative remedy request suggest, held in civil immigration detention analogous to civil INS custody.

3.  The Manual's exception to "official detention" for pretrial custody purposes is limited to civil INS custody pending a deportation determination.

4.  Mr. DeHart was held in maximum security criminal facilities in Canada, because of pending criminal charges against him in the United States.

5.  His parents, subject to the same political asylum request, were neither detained nor subject to any conditions of release.

6.  The interim between Mr. DeHart's two periods of pretrial detention at criminal facilities resulted from appeal of the detention decision, after a Canadian court reviewed materials relating to his torture at the hands of United States DHS agents and other U.S. law enforcement agents.

7.  That period of supervised release was under strict conditions relating to Mr. DeHart's residence and location, among other restrictions.

8.  The second period of pretrial detention resulted from the family's move from one unit to another in the apartment building where they resided in Canada, and Mr. DeHart's inability to report in-person within the specified timeframe due to a holiday weekend. A Canadian court considered this a breach of the supervised release conditions.

9.   Both periods of detention were in criminal facilities, controlled and operated by Canada's equivalent to the BoP.

10. Both periods of detention were because of the pending criminal charges against Mr. Dehart in the United States.

11. Mr. DeHart was not deported; his admissibility on political asylum grounds was denied, also because of the pending criminal charges in the United States.

12. The text and law of 18 U.S.C. § 3585 require awarding Mr. DeHart full credit for the 439 days spent in Canadian criminal detention before returning to the United States.

## SECOND CLAIM
## CUSTODY CREDIT AS AN ABSCONDER

1.     The preceding paragraphs are repeated and re-alleged as though fully set forth here.

2.     Even if Mr. DeHart's custody was not based on the pending criminal charges under 18 U.S.C. § 2251, he is still entitled to credit against his conviction under 18 U.S.C. § 3146 for failure to appear.

3.     The Manual specifically provides a time credit for "absconders" under this section, for those apprehended after failing to appear. *See* Manual, p. 1-14D.

4.     Shortly after Mr. DeHart's flight to Canada, the District Court for the Middle District of Tennessee issued a bench warrant for his failure to appear. This resulted in his pretrial detention in Canada. Neither he nor his family were detained upon crossing the border or upon applying for political asylum – the bench warrant, not his entry into the country, caused this period of detention in criminal facilities.

## THIRD CLAIM
## CUSTODY CREDIT FOR RELIANCE IN SENTENCING AND PLEA DISCUSSION

1.      The preceding paragraphs are repeated and re-alleged as though fully set forth here.

2.      Even if Mr. Dehart's pretrial detention in Canada is not considered "official detention" for pretrial custody credit, he was led to believe it would at all times by the sentencing court and the prosecuting attorneys at the Middle District of Tennessee U.S. Attorney's Office (the "U.S. Attorneys").

3.      Mr. DeHart relied on these statements in deciding to accept the plea deal negotiated by his attorneys and the U.S. Attorneys.

4.      The plea agreement included a binding sentencing agreement, which was negotiated based on a consensus expectation that Mr. DeHart's pretrial custody would be credited to the actual sentence served.

5.      In fact, upon beginning his post-trial custody, BoP agreed in this calculation. Mr. DeHart served over 1.5 years in reliance on this calculation.

6.      A plea agreement is effectively a contractual agreement. BoP's August 2017 recalculation undermined the reliance of all parties on the agreed-upon sentence.

## FOURTH CLAIM
## CUSTODY CREDIT TO PRESERVE FIFTH AMENDMENT
## DUE PROCESS RIGHTS

1.      The preceding paragraphs are repeated and re-alleged as though fully set forth here.

2.      After sentencing on the binding plea agreement in the Middle Distrcit of Tennessee, Mr. DeHart served roughly one and a half years of his sentence based on a calculation which credited his entire pretrial custody in Canada.

3.      Immediately prior to BoP's August 2017 recalculation, Mr. Dehart received a questionnaire related to foreign prison time from BoP personnel at FCI Ashland.

4.      Mr. DeHart requested to speak with counsel about the questionnaire. BoP did not grant this request.

5.      Rather than provide Mr. DeHart an opportunity to speak with counsel, BoP issued a recalculation that falsely claims to be made at Mr. DeHart's request.

6.      Mr. DeHart never sought recalculation, nor undertook any other act that would disrupt his expectation of finality in his sentence.

7.      For no reason other than vindictive retaliation for Mr. DeHart's request to speak with counsel, BoP rescinded 439 days of pretrial custody credit.

8.      In doing so, BoP violated both Mr. Dehart's Fifth Amendment due process right to be free of retaliation for exercising a constitutionally protected right, and the Double Jeopardy clause's guarantee against multiple punishments.

**WHEREFORE**, Petitioner respectfully requests that this Court:

1.  Assume jurisdiction over this matter;

2.  Enjoin Respondents from rescinding the 439 days of pretrial custody time Mr. DeHart spent in official detention in Canada;

3.  Enter a judgment declaring that Respondents' sentencing recalculation rescinding the 439 days of pretrial custody time is unauthorized by statute and contrary to law;

4.  Issue a Writ of Habeas Corpus requiring Respondents to release Mr. DeHart on the appropriate date, based on his original sentence calculation, of September 11, 2018;

5.  Award Mr. DeHart all reasonable costs and attorney's fees in this action as provided by the Equal Access to Justice Act, 28 U.S.C. § 2412, or other statute; and

6.  Grant such other relief as this Court may deem just.

Dated: July 13, 2018

Respectfully submitted,

*/s/ Frederic B. Jennings*
Frederic B. Jennings
**Tor Ekeland Law, PLLC**
195 Montague Street, 14th floor
Brooklyn, NY 11201
p: (718) 737-7264
f: (718) 504-5417
fred@torekeland.com

*Attorneys for Petitioner Matthew DeHart*

**<u>Verification by Someone Acting on Petitioner's
Behalf Under 28 U.S.C. § 2242</u>**

I submit this verification on behalf of the Petitioner, as one of Petitioner's attorneys. I

have discussed the facts and events described in this petition with the Petitioner. On the basis of

those discussions, I verify that the statements made in the above Petition for Writ of Habeas

Corpus are true and correct to the best of my knowledge.

Dated: July 13, 2018

Respectfully submitted,

*/s/ Frederic B. Jennings*
Frederic B. Jennings
**Tor Ekeland Law, PLLC**
195 Montague Street, 14th floor
Brooklyn, NY 11201
p: (718) 737-7264
f: (718) 504-5417
fred@torekeland.com