Eastern District of Kentucky
F I L E D
SEP 0 3 2019
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

MATTHEW DeHART,

    Petitioner,

v.

J.C. STREEVAL, ET AL.,

    Respondent.

Civil No. 18-74-HRW

**MEMORANDUM OPINION AND ORDER**

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Petitioner Matthew DeHart is an inmate at the Federal Correctional Institution ("FCI")-Ashland, located in Ashland, Kentucky. Represented by counsel, DeHart has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, in which he challenges the computation of his sentence by the Bureau of Prisons ("BOP"), specifically whether he is entitled to 439 days of foreign custody credit. [D.E. No. 1] The Respondent has filed his response to the petition [D.E. No. 10], and DeHart has filed a reply. [D.E. No. 12] Thus, this matter is ripe for review.

**I.**

In his petition, DeHart states that, from 2005 until his 2010 arrest, he was affiliated with the Internet activist group "Anonymous," and was a system administrator for a communal Tor server used by members of that group. [D.E. No.

1

1 at p. 8]¹ DeHart alleges that, from 2008 through 2010, "files appeared on this server that among other things, implicated a federal agency in criminal activity against United States citizens, as well as documented apparent malfeasance by American and multinational companies." [*Id.*] DeHart further claims that, during this period he "was also part of a drone team at one of the main U.S. Drone Operations Centers in Terre Haute, Indiana, where he had access to top secret information." [*Id.*]

On August 6, 2010, a warrant was issued for DeHart's arrest based on a criminal complaint filed in the United States District Court for the Middle District of Tennessee alleging that DeHart had knowingly coerced a minor to engage in sexually explicit conduct for the purposes of producing any visual depiction of such conduct, knowing that such visual depictions would be transported in interstate commerce, in violation of 18 U.S.C. § 2251(a). *See United States v. Matthew DeHart*, Case No. 3:10-cr-250-1 (M.D. Tenn. 2010).

According to Respondent, on August 6, 2010, DeHart was arrested in the District of Maine by the Federal Bureau of Investigation ("FBI") for manufacturing

---

¹ As explained by DeHart, "Tor, short for 'The Onion Router,' is a deep web service which allows obfuscated access to websites and access to Tor sites ending in .onion. Tor is designed in a way that permits relatively anonymous browsing." [D.E. No. 1 at p. 8, FN3]

obscene material. [D.E. No. 10-1 at Page ID# 132] However, according to DeHart, on August 6, 2010, he was detained by Immigration and Customs Enforcement ("ICE") agents after crossing the border from Canada into the United States at the international border crossing in Calais, Maine, because his border crossing set off an alert indicating that he was wanted for questioning in an espionage matter. [D.E. No. 1 at p. 9] DeHart further alleges that the ICE agents subsequently handed DeHart over to the FBI who placed him in a detention cell and then later began interrogating him regarding national security matters. [*Id.*] DeHart claims that, while he was detained in Maine, FBI agents tortured him (including depriving him of food and sleep) and repeatedly interrogated him without counsel regarding national security matters, despite his repeated requests for counsel. [*Id.* at p. 9-10]

His initial appearance was conducted by a United States Magistrate Judge in the District of Maine on August 9, 2010, and continued to August 11, 2010. *See United States v. Matthew DeHart*, Case No. 3:10-cr-250-1 (M.D. Tenn. 2010). After a detention hearing, the Magistrate Judge determined that DeHart was a flight risk and ordered that he be detained and transferred to the Middle District of Tennessee. On October 6, 2010, a federal grand jury sitting in the Middle District of Tennessee issued an Indictment charging DeHart with one count of production of child pornography in violation of 18 U.S.C. §§ 2251(a) and 2251(d) (Count One) and one

count of transportation of child pornography in violation of 18 U.S.C. §§ 2252A(a)(1) and 2252(b)(1) (Count Two).

On May 22, 2012, DeHart was released on bond pending trial, with special conditions. On April 3, 2013, while awaiting trial on the child pornography charges, DeHart entered Canada, requesting refugee protection and political asylum, based on his claims that he had been tortured by the United States authorities when he was detained in Maine and feared persecution if he was returned. [D.E. No. 10-1 at Page ID#: 144-245]

On April 4, 2013, after DeHart failed to appear for a status conference and detention review hearing, a bench warrant was issued for his arrest by the District Judge in the Middle District of Tennessee. Also on April 4, 2013, DeHart was arrested by the Canada Border Services Agency on the grounds that his refugee claim was suspended pending an admissibility hearing under applicable Canadian law. [D.E. No. 10-1. Reasons for Judgment issued by the Canadian Federal Court, 2013 FC 936, Sept. 5, 2013 at Page ID# 146] On April 8, 2013, DeHart was ordered to be detained on the grounds that he was a danger to the public and unlikely to appear for future immigration proceedings due to the serious nature of the child pornography charges pending against him, the allegations of espionage, and his history of violating court orders. [*Id.*]

On August 7, 2013, another detention review hearing was held and DeHart's release was authorized, subject to certain conditions, including GPS monitoring. [*Id.* at Page ID# 148-149]. However, in April 2014, DeHart failed to report a change of address to the Canadian Border Services Agency. Accordingly, on April 23, 2014, DeHart was rearrested by the Canada Border Services Agency and held in a maximum-security criminal facility after a Canadian court determined that he violated his release conditions.[2]

DeHart's request for asylum was denied by Canadian authorities and he was deported to the United States on March 1, 2015. On that same day, he was arrested by the FBI at the United States/Canadian border and was turned over to the custody of the United States Marshals.

On November 12, 2015, a Superseding Information was issued in the Tennessee criminal case charging DeHart with two counts of receiving child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1) (Counts One and Two) and one count of failure to appear in violation of 18 U.S.C. §§ 3146(a)(1) and 3146(b)(1) (Count Three). That same day, and pursuant to a plea agreement with the United States, DeHart pled guilty to the three counts charged in

---

[2] According to DeHart, during his time in Canadian custody, he was held in maximum security criminal facilities run by Correctional Service Canada, an equivalent to the United States BOP.

the Superseding Information. On February 22, 2016, DeHart was sentenced in the United States District Court for the Middle District of Tennessee to a term of imprisonment of 72 months each on Counts One and Two (to run concurrently with each other) and 18 months on Count Three (to run consecutively to the terms imposed on Counts One and Two), for a total term of imprisonment of 90 months.

The BOP has computed DeHart's sentence to commence on February 22, 2016, the date it was imposed. DeHart was credited with time spent in custody from August 6, 2010, the original date of his arrest, through May 22, 2012, the date that he was released on bond. DeHart was also credited with time spent in custody from March 1, 2015, the second date of his arrest by federal authorities after his deportation from Canada, through February 21, 2016, the day before the federal sentenced commenced. In addition, DeHart is projected to earn 352 days Good Conduct Time ("GCT"), resulting in a projected Statutory Release Date of November 24, 2019. [D.E. No. 10 at p. 4-5]

In its original computation of DeHart's sentence, the BOP credited DeHart for all of the time spent in Canadian custody pending his admissibility hearing on his asylum claim. [D.E. No. 1-2] However, on August 21, 2017, after an investigation into the possibility of foreign jail credits in DeHart's case, an official with the Designation and Sentence Computation Center issued a Memorandum for File

6

concluding that DeHart is not authorized credit under 18 U.S.C. § 3585(b) for time detained in Canada because he was detained because he requested asylum and then he was deported to the United States after his asylum request was rejected. [D.E. No. 1-3] Accordingly, the BOP recalculated DeHart's sentence, no longer crediting him with the time spent in Canadian custody. [D.E. No. 1-4]

In his § 2241 habeas petition filed in this Court, DeHart requests this Court to reinstate his prior custody credit for the approximately 439 days that he spent in detention in Canada, first from April 3, 2013 through August 7, 2013 and then from April 23, 2014 through February 28, 2015. He claims that the BOP only recalculated his sentence to exclude his foreign custody credit after he requested to speak with counsel. In addition, he claims that he accepted his plea agreement because he was led to understand that he would be credited with his time spent in foreign custody, thus the BOP's change in position violates his due process rights and the Double Jeopardy Clause of the Fifth Amendment. However, having thoroughly reviewed the briefs and the record in the case, the Court finds that DeHart is not entitled to the relief he seeks.[3]

## II.

---

[3] The parties do not dispute that DeHart fully exhausted his applicable administrative remedies prior to filing his habeas petition in this Court.

Calculation of a federal prisoner's sentence, including both its commencement date and any credits for custody before the sentence is imposed, is determined under 18 U.S.C. § 3585, which provides as follows:

> (a)  A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b)  A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
>
>     (1)  as a result of the offense for which the sentence was imposed; or
>
>     (2)  as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585.

Section 3585(b) establishes whether a defendant may obtain credit for time spent in custody before the sentence commences. DeHart argues that he was detained by Canadian authorities as a result of the criminal charges pending against him in Tennessee. Thus, according to him, he was in "official detention" as a result of the offense for which the sentence was imposed and is entitled to credit pursuant to § 3585(b)(2).

8

However, DeHart's claim that he was in Canadian custody as a result of his criminal charges is contradicted by the Reasons for Judgment issued by the Canadian Federal Court, 2013 FC 936, Sept. 5, 2013 [D.E. No. 10-1 at Page ID# 143-158], which indicates that DeHart was detained pending his admissibility hearing based on his refugee claim and request for political asylum. Specifically, the Reasons for Judgment states that DeHart was arrested by Canada Border Services Agency on April 4, 2013 "on the grounds that his refugee claim was suspending pending an admissibility hearing under subparagraphs 34(1)(a) and 36(1)(c) of the [*Immigration and Refugee Protect Act*, S.C. 2001, c. 37 (the 'Act')]." [*Id.* at Page ID# 146] The Canadian Federal Court further explains:

> At the first detention review hearing on April 8, 2013, [DeHart] was ordered detained pursuant to subparagraphs 58(1)(a) and 58(1)(b) of the Act, namely on the grounds that he was a danger to the public, his charge being a sexual offence falling under subsection 246(f) of the *Immigration and Refugee Protection Regulations*, S.O.R. 2002-227 (the "Regulations") and that he was unlikely to appear for future immigration proceedings. The Board noted that detention was warranted as he was a danger to the public due to the serious nature of the child pornography offences and the allegations of espionage, and his history of violating court orders. It also found that the Respondent had not presented an alternative to detention nor was there any indication that he faced a lengthy detention.

[*Id.*]

Thus, while the pending child pornography charges may have been a factor in the Canadian authorities' decision to detain DeHart, these charges were only one of

9

several reasons – including DeHart's own claims that the United States government accused him of espionage, as well as DeHart's history of violating court orders – that DeHart was detained pending his admissibility hearing. The Respondent has further submitted confirmation (which is not contradicted by DeHart), that DeHart was not extradited from Canada to face criminal proceedings in the United States (as he would have been if he was being held because of his pending criminal charges), but was instead deported, through immigration procedures, back into the United States by Canadian authorities. [D.E. No. No. 10-1 at Page ID# 170-171]

DeHart points to BOP Program Statement 5880.28, Sentence Computation Manual, which provides in part:

> Official detention does not include time spent in the custody of the U.S. Immigration and Naturalization Service (INS) under the provisions of 8 U.S.C. § 1252 pending a final determination of deportability. <u>An inmate being held by INS pending a civil deportation determination is not being held in "official detention" pending criminal charges.</u> (See *Ramirez-Osorio v. INS*, 745 F.2d 937, rehearing denied 751 F.2d 383 (5th Cir. 1984); *Shoaee v. INS*, 704 F.2d 1079 (9th Cir. 1983); and *Cabral-Avila v. INS*, 589 F.2d 957 (9th Cir. 1978), cert. denied, 440 U.S. 920, 99 S.Ct 1245, 59 L.Ed2d 472 (1979.)

BOP Program Statement 5880.28 (CN-03), February 14, 1997 at Page 1-15A, available at https://www.bop.gov/policy/progstat/5880_028.pdf (emphasis in original).

Although this Program Statement clearly excludes time spent in INS custody in the United States pending deportation, DeHart argues that, because the Program

Statement is silent regarding whether that exception includes time spent in non-INS facilities because of pending criminal charges, it then follows that DeHart's time in Canadian custody is *not* exempt from the definition of "official detention" for which a defendant may receive credit under § 3585(b). However, DeHart's argument is not supported by the case law he cites and is otherwise without merit.

DeHart first offers a quote from *Reno v. Koray*, 515 U.S. 50, 58 (1995), in which the Supreme Court notes that "[t]he phrase 'official detention facility' in § 3585(a) therefore must refer to a correctional facility designated by the Bureau for the service of federal sentences, where the Bureau retains the discretion to 'direct the transfer of a prisoner from one penal or correctional facility to another.'" *Id*. DeHart reasons that, as he was held in criminal facilities run by the Canadian equivalent to the BOP (or the "Bureau"), he should receive prior custody credit for this time. However, DeHart cites to no authority for his proposition that an "official detention facility" also includes a *foreign* correctional facility, particularly where, as here, DeHart was only in Canadian custody first, because he sought asylum in Canada, and then because he failed to comply with the conditions of his release imposed upon him by the Canadian Court.

Likewise, his reliance on *Zavala v. Ives*, 785 F.3d 367 (9th Cir. 2015) is also unavailing. In *Zavala*, the Ninth Circuit held that, "where ICE detains an alien

pending potential criminal prosecution, that detention constitutes 'official detention' within the meaning of § 3585(b) and the alien is accordingly entitled to credit towards his criminal sentence." *Id.* at 369. However, DeHart was neither in ICE custody in this country, nor was he held by Canadian authorities pending his potential criminal prosecution in Tennessee. Rather, DeHart was in Canadian custody pending his civil deportation hearing. While the fact that he was facing criminal charges related to child pornography was considered by Canadian authorities in determining whether DeHart was a danger to the public and should remain in custody, this was simply one of several factors that weighed in favor of his detention pending his admissibility hearing. And, as argued by Respondent, the relevant case law affirms the BOP's position that an alien being held for deportation – which is a civil, not criminal, proceeding – is not entitled to sentencing credit under § 3585(b). *See Aguila v. Stone*, CV 317-008, 2017 WL 2197123, *3 (S.D. Ga. May 18, 2017) (citing *United States v. Noel*, 231 F.3d 833, 837 (11th Cir. 2000)); *Aslanyan v. Johnson*, No. EDCV 15-02383-GHK (DFM), 2016 WL 6156078, *3 (C.D. Cal. Sept. 9, 2016) (because "ICE was not detaining Petitioner 'for the purpose of securing his attendance at a criminal proceeding,' but rather pending a civil deportation determination initiated by Petitioner," Petitioner was not entitled to credit toward his criminal sentence); *Solorzano–Cisneros v. Zych*, No. 7:12–cv–

00537, 2013 WL 1821614, *3 (W.D. Va. Apr. 30, 2013) ("The period...when Solorzano–Cisneros was held in ICE custody pending civil deportation review, does not constitute 'official detention' under pending criminal charges....") (citing *United States v. Lopez*, 650 F.3d 952 (3d Cir. 2011)).[4]

Similarly, DeHart's claim that he is entitled to credit as an "absconder" under 18 U.S.C. § 3146 for his failure to appear rests upon the assumption that DeHart was in Canadian custody only because of the bench warrant issued in Tennessee for his failure to appear. However, again, this claim is not supported by the record which, to the contrary, repeatedly indicates that DeHart was in Canadian custody as a result of his own asylum claim based on his allegations that he was suspected of espionage and had previously been tortured by federal officials.

DeHart's remaining arguments are likewise without merit. DeHart argues that he is entitled to credit because he accepted the plea agreement based on the understanding that the 439 days of foreign pretrial detention would apply as credit towards his time served, an understanding that he claims was shared by defense counsel, the U.S. Attorneys, and the Middle District of Tennessee District Court Judge. First, DeHart's representations regarding the "intent" of the prosecutors in

---

[4] For further legal authority in support of Respondent's claim, see D.E. No. 10, Response, at p. 8-9.

his case and the District Judge sentencing him that he be credited with 439 days of foreign pretrial detention are neither supported by the plea agreement nor the sentencing transcript.[5] Regardless, it is the BOP, not the prosecutors or the sentencing court, which has the exclusive authority to determine when a sentence commences and to calculate any prior custody credits under § 3585(b). *United States v. Wilson*, 503 U.S. 329, 331 (1992). *See also Rambo v. Hogsten*, No. CIV.A. 10-116-ART, 2010 WL 4791970, at *3 (E.D. Ky. Nov. 17, 2010) ("Although it was the court that imposed the sentence, it is the BOP's job to determine how the sentence is executed—*i.e.,* when the sentence commenced and whether [petitioner] is entitled to any prior custody credits."). As the BOP is the agency charged with administering § 3585, its interpretation of the "official detention" language to preclude credit for time spent in custody pending deportation proceedings is entitled to some deference if it is a "permissible construction of the statute." *Reno*, 505 U.S. at 61 (citing *United*

---

[5] The Plea Agreement is silent regarding foreign custody credit. *See United States v. Matthew DeHart*, Case No. 3:10-cr-250-1 (M.D. Tenn. 2010) at D.E. No. 285. Moreover, based on the transcript submitted by DeHart, the District Court Judge observed only that she "presumed" DeHart would get credit from the BOP for the three years of custody DeHart had served prior to sentencing. [D.E. No. 1-1 at p. 16] However, this statement is consistent with the BOP's August 24, 2017 recalculation, as it credited DeHart with 1014 days (or almost three years) of time spent in custody in the United States as a result of his child pornography charges. [D.E. No. 1-4] Had the District Judge intended to include DeHart's time spent in foreign custody in her "presumption," this time would have been 1453 days (or just over four years).

14

*States v. Wilson*, 503 U.S. 329, 334-335 (1992); *Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 99 (1995); *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 157 (1991); *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984).

Because this Court finds that the BOP's interpretation of § 3585 through Program Statement 5880.28 is a reasonable, permissible interpretation, it will defer to that interpretation, notwithstanding DeHart's representations regarding his understanding of the calculation of his custody credit at the time of his plea agreement. Although DeHart argues that the BOP's interpretation of § 3585 and Program Statement 5880.28 are unfair, "[u]nfair and illegal are two different things, and Policy Statement 5880.28 assuredly is not illegal." *Rambo*, 2010 WL 4791970 at *7. Moreover, even if the Court agreed that the recalculation of DeHart's sentence was unfair, as observed by Judge Amul R. Thapar in *Rambo*, "[t]he Court cannot substitute its own calculation for the BOP's considered policy, even if the Court considers the BOP's calculation of Rambo's sentence to be somewhat unfair." *Id.*

DeHart's further claims that the BOP's actions in unilaterally increasing his sentence via a sentencing recalculation violates the Double Jeopardy clause of the Fifth Amendment, as well as his due process rights and his Sixth Amendment right to counsel. "[W]hen the Government has already imposed a criminal penalty and

seeks to impose additional punishment in a second proceeding, the Double Jeopardy Clause protects against the possibility that the Government is seeking the second punishment because it is dissatisfied with the sanction obtained in the first proceeding." *United States v. Husein*, 478 F.3d 318, 338 (6th Cir. 2007) (quoting *United States v. Halper,* 490 U.S. 435, 451 n. 10 (1989), abrogated on other grounds by *United States v. Ursery,* 518 U.S. 267 (1996)). Thus, the relevant question on a claim of a Double Jeopardy violation is "whether the addition[al sentence] upsets the defendant's legitimate 'expectation of finality in the original sentence.'" *Id.* (quoting *Jones v. Thomas*, 491 U.S. 376, 394 (1989)(Scalia, J., dissenting)(alterations in original).

However, here the BOP did not impose an "additional" sentence, nor did it "increase" the length of DeHart's sentence after his service of that sentence had begun. Rather, the BOP discovered an error in the calculation of DeHart's prior foreign custody credits, requested that the Designation and Sentence Computation Center investigate DeHart's eligibility for foreign jail credit, then recalculated his sentence in accordance with the results of its internal investigation. [D.E. No. 1-3] Thus, DeHart is not spending any more time in federal custody than he would have if BOP officials had discovered and corrected their own computation mistake earlier.

DeHart's argument presumes that, after erroneously crediting him with time spent in Canadian custody in its initial sentencing computation [D.E. No. 1-2], the BOP was precluded from correcting that error in its revised sentencing computation issued on August 24, 2017. [D.E. No. 1-4] However, a party seeking to invoke equitable estoppel against the government must show some affirmative misconduct by a government agent. *United States v. Guy*, 978 F.2d 934, 937 (1992). Although DeHart's Sixth Amendment claim argues that the BOP recalculated his sentence to retaliate against him because he requested to speak with counsel, his allegation of retaliation is directly contradicted by the timeline of events provided by DeHart. DeHart alleges that, immediately prior to the BOP's August 2017 recalculation of his sentence, he received a questionnaire related to foreign prison time from BOP personnel. [D.E. No. 1 at p. 21] He further claims that, after he requested to speak with counsel about the questionnaire, rather than grant this request, the BOP issued the recalculation "[f]or no reason other than vindictive retaliation." [*Id.*] However, to allege retaliation, DeHart must show that the BOP's recalculation of his sentence was motivated at least in part by DeHart's conduct. *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012). The very fact that the BOP requested that DeHart complete the questionnaire in the first place establishes that the agency was investigating his eligibility for foreign custody credit prior to DeHart's request to speak with counsel,

17

thus his request could not have motivated the recalculation of his sentence. Regardless, mere correlation does not unequivocally imply causation: courts have stressed that while temporal proximity between the protected conduct and the allegedly retaliatory act may provide indirect evidence of the defendant's motive to retaliate, *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004), it is usually coupled by other indicators of intent, such as a history of antagonism between the parties, *Watson v. Rozum*, 834 F. 3d 417, 422 (3d Cir. 2016), something notably absent here.

Nor is there a due process violation, "because a prisoner has no legally protected interest in the earlier misapplication of rules and regulations concerning his release date. *Taylor v. Wilson*, No. 11-CV-00009-HRW, 2012 WL 2021799, at *4 (E.D. Ky. June 5, 2012) (citing *Dann v. Martinez,* 2007 WL 1203186, at *3 (D.S.D. 2007). *See also McQuerry v. U.S. Parole Comm'n,* 961 F.2d 842, 846–47 (9th Cir. 1992) (Parole Commission is not estopped from reopening petitioner's case and forfeiting erroneously granted sentence credits simply because the BOP had mistakenly given petitioner an early presumptive release date); *Molloy v. Berkebile,* 2007 WL 30252, at *2 (N.D. Tex.2007) ("If the BOP has erroneously calculated petitioner's projected release date, it has authority to correct that error and should be permitted to do so."); *Freeman v. Warden, USP Coleman,* 2006 WL 845358, at *2

(M.D. Fla. 2006) (BOP is not estopped from withdrawing credits that were awarded erroneously).

For all of these reasons, the BOP was not precluded from recalculating DeHart's sentence to correct its previous error in awarding foreign custody credit. Moreover, its determination the DeHart is not entitled to prior custody credit pursuant to § 3585(b) for his time spent in detention in Canada in accordance with Program Statement 5880.28 is a reasonable, permissible interpretation of § 3585, to which this Court will defer. Accordingly, the Court finds that DeHart is not entitled to habeas relief based on the § 2241 petition filed in this Court.

Accordingly, it is **HEREBY ORDERED** that:

1. DeHart's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [D.E. No. 1] is **DENIED**.

2. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

3. A corresponding judgment will be entered this date.

This ___ day of ~~August~~ 2019.



Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge